UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DONALD WEBSTER LANGHORNE,                       :

        Plaintiff,                       : 03 Civ. 4610 (RMB) (GWG)

  -v.-                                                         :
                                                      REPORT AND RECOMMENDATION
THE PORT AUTHORITY OF NEW YORK            :
AND NEW JERSEY and
ROBERT HALF INTERNATIONAL, INC.,          :

        Defendants.                     :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Donald Webster Langhorne filed this complaint against his former employer, the Port Authority of New York and New Jersey ("Port Authority"), and Robert Half International, Inc. ("RHI"). The complaint purports to raise claims against RHI under 42 U.S.C. § 1985(3), N.Y. Exec. Law § 296(1) and N.Y.C. Admin. Code § 8-107, prima facie tort, and tortious interference of contract. RHI has moved to dismiss the complaint for, inter alia, failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons stated below, RHI's motion to dismiss should be granted.

I. BACKGROUND

     A. Factual History

The following facts are alleged by Langhorne in his Amended Complaint and are accepted as true for the purposes of the current motion. See Amended Complaint and Jury Trial Demand, dated May 21, 2004 ("Am. Compl.") (Docket #10).

1

Donald Langhorne worked as an employee of the Port Authority from May 1999 until January 31, 2003, when he was terminated. See Am. Compl. ¶ 4. The Port Authority is a bi-state entity created by compact between the States of New York and New Jersey. See id. ¶ 6. Between May 1999 and October 2001, Langhorne held several different positions within the Port Authority, including Summer Law Intern, Senior Paralegal Specialist, and permanent Law Intern. See id. ¶¶ 12-13. Following the destruction of the World Trade Center on September 11, 2001, Langhorne was transferred, along with three other employees, to a newly-created subdivision of the Administrative and Technical Services Division -- later named the Litigation Management Unit ("LMU") -- for the purpose of retrieving and reconstructing legal case files destroyed on September 11th. See id. ¶¶ 15-16.

For the next several months, the LMU operated with no formal policy, and sometimes without regular access to computers and phones. See id. ¶¶ 16-18. On January 23, 2002, Langhorne learned from a time and labor summary sheet that his income had been deducted for being "AWOL" on January 10 and 11, 2002. He disputes this characterization, claiming that he had left on those days only because his workstation was temporarily inaccessible. See id. ¶¶ 18-19. On January 28, Langhorne was called in to a meeting and reprimanded for these disputed absences. Id. ¶ 19. On February 7, Langhorne's manager, Josephine Gajewski, memorialized the January 28 meeting, threatened Langhorne with disciplinary action for his disputed absences and other alleged infractions, and asked him to sign a "confidential memorandum." Id. ¶ 20. Langhorne refused to sign and was told he could respond to the disputed claims in writing, seek counsel from the Employment and Labor Law Division of the Law Department, or contact Human Resources. Id. ¶ 21. Upon contacting Human Resources, he was told his case was a

2

"conflict of interest" and that he would need to secure outside counsel -- an instruction he believed violated his rights as a Port Authority employee. See id. ¶ 22. Langhorne consulted an attorney, but did not have sufficient documentation and was unable to afford counsel's hourly rates. Id. ¶ 23.

In February 2002, the LMU was reorganized, and the Port Authority brought in two temporary employees of an "independent" employment agency to act as a manager and supervisor. See id. ¶ 24. The independent employment agency was defendant RHI, and the supervisor was Jonathan Stark, an employee of a subsidiary of RHI called The Affiliates. See id. ¶¶ 9, 24. RHI is a personnel services, recruiting, and placement firm. Id. ¶ 9.

Langhorne asked why he had not been given the chance to apply for the supervisory position and was told he was not qualified, even though he had more formal and legal education and work experience than Stark. Id. ¶ 24. Stark is a white male; Langhorne is an African-American male. Id. ¶¶ 4, 24.

Stark immediately began compiling a "secret log" against Langhorne. Id. ¶ 25. On March 5, 2002, Stark ordered Langhorne to sign a memorandum relating to Langhorne's new job duties. When Langhorne asked whether other employees were required to do this, Stark told him that if he did not sign he would be accused of insubordination. Id. ¶ 26. On April 19, 2002, Langhorne was called to Gajewski's office, where he was served with a draft of a charge against him and a recommendation for his termination. He was told to review the draft and report to a meeting one week later. He subsequently learned from the Labor Relations Division that a disciplinary proceeding against him was being initiated, but he had not previously received any information about this. See id. ¶ 27.

At the follow-up meeting on April 30, 2002, Langhorne met with Gajewski and Stark, who told him that he could accept five days' suspension without pay and ten days "in abeyance" as an alternative to the termination proceeding. His only other option, he was told, was to resign. See id. ¶ 28. He was also told that the offer was good until May 3, but when he appeared on that day, he learned that the offer had been revoked on May 1, without his knowledge, because he had failed to move his computer monitor as requested by Stark. No other employees were similarly ordered to move their monitors. Id. ¶¶ 28-30. Langhorne was told to contact Labor Relations to present a counteroffer. Id. ¶ 30.

On May 9, 2002, Langhorne received an e-mail from Gajewski demanding his resignation by the following day, and stating that he would otherwise be suspended without pay pending a hearing to terminate him. Id. ¶ 31. He refused to resign, and the Port Authority filed a formal charge against him. Id. On May 28, 2002, Langhorne received a job evaluation that he disputed and refused to acknowledge. Id. ¶ 32. On July 9, 2002, Langhorne was served with the charge and nine specifications. Jeffrey Green, General Counsel of the Port Authority, was the complainant, the reviewer of the complaint, and the reviewer of the selection of the Impartial Hearing Officer for the disciplinary proceeding. Id. ¶ 33. Langhorne states that this was a conflict of interest and against the terms of his employment. Id.

Langhorne's first hearing was on July 30, 2002, at which time a tenth specification was added: the falsification of time sheets -- specifically, the deletion of alterations made by Stark. Langhorne appeared at the hearing pro se. Id. ¶ 34. Langhorne also appeared pro se at his second hearing, on August 12, 2002. Id. ¶ 35. After the second hearing, Langhorne contacted

4

the Port Authority's Office of Equal Opportunity Employment to complain of discrimination, but that office did not inquire further. Id.

On October 31, 2002, the Impartial Hearing Officer recommended Langhorne's termination, and Langhorne was suspended with pay pending the outcome of the disciplinary process. Id. ¶ 37. On November 19, 2002, Langhorne filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which forwarded the charge to the New York State Division of Human Rights. Id. ¶¶ 38-39.

On January 31, 2003, the Port Authority approved the recommendation of Langhorne's termination -- an action that did not conform to the Port Authority's established process. Id. ¶ 40.

B. Court Proceedings

On March 10, 2003, the EEOC issued a "Notice of the Right to Sue." Id. ¶ 41. On May 30, 2003, Langhorne commenced a special proceeding under Article 78 of the Civil Practice Law and Rules in the Supreme Court, New York County, against defendant Port Authority and several individual employees of the Port Authority. Id. ¶ 42. On October 10, 2003, the case was transferred to the Appellate Division, First Department, and is still pending. Id. ¶¶ 43-44.

Langhorne's pro se complaint in this action was filed on June 24, 2003. Langhorne thereafter obtained counsel, Robert Barsch, who filed an Amended Complaint on May 21, 2004, adding RHI as a defendant. See Am. Compl. ¶¶ 9-11. The bases for the claims against RHI are 42 U.S.C. § 1985(3), id. ¶¶ 54-57; prima facie tort, id. ¶¶ 74-77; employment discrimination and retaliation under N.Y. Exec. Law § 296(1) and N.Y.C. Admin. Code § 8-107, id. ¶¶ 78-84, 85-90, 91-99, 100-08; and tortious interference of contract, id. ¶¶ 109-12.

5

The Amended Complaint was not served on RHI until December 31, 2004. See Memorandum in Support of Defendant's Motion to Dismiss the Amended Complaint, at 6. RHI now moves to dismiss all claims against it for failure to state a claim, for failure to make timely service, and on statute of limitations grounds. See id. at 6-12. Because the Amended Complaint fails to state a claim, it is unnecessary to reach the other grounds raised.

II. DISCUSSION

A. Standard of Review

On a motion to dismiss under Rule 12(b)(6), dismissal is appropriate "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000) (quoting Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000)). The complaint need only give "fair notice of what petitioner's claims are and the grounds upon which they rest." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002). All allegations made by the plaintiff are accepted as true and all reasonable inferences are drawn in plaintiff's favor. See Halperin v. Ebanker USA.com, Inc., 295 F.3d 352, 356 (2d Cir. 2002). "At the 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996)).

B. The § 1985(3) Conspiracy Claim

In order to state a claim of conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly,

6

any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters and Joiners v. Scott, 463 U.S. 825, 828-29 (1983). These allegations must be more than "conclusory, vague, or general" if they are to withstand a motion to dismiss on the pleadings. Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003) (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)), cert. denied, 540 U.S. 1110 (2004); cf. Straker v. Metropolitan Transit Auth., 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) (while a heightened pleading standard is not required in civil rights cases, "a claim that does not contain any supporting factual allegations cannot withstand a Rule 12(b)(6) motion") (citing cases).

In this case, it is not necessary to rely on a heightened pleading standard for civil rights cases to determine that the Amended Complaint fails to state a claim. The Amended Complaint contains no factual allegations that defendants RHI and Port Authority engaged in any behavior constituting a conspiracy to deprive him of any protected rights. Indeed, Langhorne does not even allege that RHI knew of his existence. Rather, Langhorne's complaint is that RHI was the employment agency that initially placed Stark -- the supervisor who allegedly engaged in discriminatory acts -- at the Port Authority. While the complaint states conclusorily that RHI and the Port Authority "have conspired" to deprive Langhorne of his federal rights, see Am. Compl. ¶¶ 54-57, it does not "'provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" Webb v. Goord, 340 F.3d at 110 (quoting Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)). Thus, the amended complaint fails because it does not "point to any specific evidence of

7

communications between the two entities," and "only vaguely refers to some 'conspiracy.'" Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999).

In addition, because a corporation can act only through its agents, see, e.g., Braswell v. United States, 487 U.S. 99, 110 (1988) (citation omitted), the conclusory statement that "RHI" -- as opposed to some individual acting as RHI's agent -- conspired with the Port Authority to deprive plaintiff of his rights fails to give "fair notice of . . . the grounds upon which [plaintiff's claims] rest." Swierkiewicz, 534 U.S. at 514. The allegations regarding Stark's conduct do not cure this defect because Langhorne alleges that Stark, although an employee of RHI, was acting as Langhorne's superior at the Port Authority with respect to his allegedly improper treatment of Langhorne. See Am. Compl. ¶¶ 24-26, 28-29. In other words, the factual allegations of the complaint are that Stark was the Port Authority's agent, not RHI's, with respect to his allegedly improper treatment of Langhorne.

The Court declines to consider Langhorne's additional allegations regarding the relationship between RHI and the Port Authority, see Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, filed June 13, 2005 ("Opp. Mem."), at 6-7, as these are matters outside the pleadings. See, e.g., Fonte v. Bd. of Managers of Continental Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988). In any event, none of these allegations – the significance of which is difficult to discern – would cure the complaint's failure to state a claim under § 1985. Langhorne suggests that the net result of including these additional allegations is to assert that RHI had "knowledge that it [was] placing temporary employees [i.e., Stark] at an entity that provides administrative relief and remedies for its permanent employees." Opp. Mem. at 7. This assertion, however, does not cure the failure to allege a conspiracy under § 1985(3).

8

Accordingly, Langhorne has failed to state a claim under § 1985(3).

C.  The Prima Facie Tort Claim

In his Amended Complaint, Langhorne claims that the "acts of [defendants] . . . constitute a prima facie tort," and have caused him damages of at least $500,000.  See Am. Compl. ¶¶ 75-76.  He further claims that the acts were committed with "malice," and that this entitles him to punitive damages.  See id. ¶ 77.

The elements of a cause of action for prima facie tort under New York law are: "(1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful[.]"  Freihofer v. Hearst Corp., 65 N.Y.2d 135, 142-43 (1985) (citing Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984)).  "Special damages" is defined as a "specific and measurable loss," Freihofer, at 143.  See also Constant v. Hallmark Cards, Inc., 568 N.Y.S.2d 441, 442 (2d Dep't 1991) (requiring "a particularized statement of the reasonable, identifiable and measurable special damages" and noting that "[b]road and conclusory terms are simply insufficient to fulfill this critical element"); Gifford v. Guilderland Lodge, No. 2480, 681 N.Y.S.2d 194, 199 (N.Y. Sup. Ct. 1998) (a "demand for a round sum, such as $1 million, is insufficient") (citing 103 N.Y. Jur.2d Torts § 22, 425-427).

On the issue of intent, the plaintiff must establish that the only motivation for the behavior of defendants was "disinterested malevolence."  Ruderman v. Stern, 2004 WL 3153217, at *16 (N.Y. Sup. Ct. 2004) (citing Avgush v. Town of Yorktown, 755 N.Y.S.2d 647 (2003)).  This means that "'the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.'"  Ruderman,

9

at *16 (citing Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314, 333 (1983) (quoting Beardsley v. Kilmer, 236 N.Y. 80, 90 (1923))). "Where there are other motives, e.g., profit, self-interest, business advantage, there is no recovery under tort prima facie[.]" Id.

Langhorne's complaint fails to state a claim for prima facie tort because he sets forth no factual allegations that RHI -- as opposed to the Port Authority or Stark -- engaged in the intentional infliction of harm. As already described, the complaint is virtually devoid of factual allegations regarding RHI's conduct. The only allegation regarding RHI is that it is the firm that placed Stark in his position at the Port Authority and that Stark was RHI's employee. See Am. Compl. ¶ 24. There is no allegation that the corporate entity RHI had any contact whatsoever with Langhorne or knew of his existence, other than by virtue of Langhorne's contact with Stark. The allegations regarding Stark do not save the complaint, as Stark is alleged to be merely a temporary worker supplied by RHI, Am. Compl. ¶ 24, and Stark's interactions with Langhorne are alleged to have occurred on behalf of the Port Authority, see id., ¶¶ 24-26, 28-29. Thus, Langhorne's complaint does not allege that RHI intentionally inflicted any harm upon him and the claim of prima facie tort must fail.

D. The NYSHRL and NYCHRL Claims

Langhorne alleges employment discrimination and retaliation by RHI under N.Y. Exec. Law § 296 ("NYSHRL") and N.Y.C. Admin. Code § 8-107 ("NYCHRL"). See Am. Compl. ¶¶ 78-84, 85-90, 91-99, 100-08. These statutes permit a suit against an "employer" or against an "employment agency." See N.Y. Exec. Law § 296(1)(a), (b) and (e); N.Y.C. Admin. Code § 8-107(1)(a), (b). But, as already noted, the complaint is devoid of factual allegations reflecting that RHI was Langhorne's "employer." See generally Sabol v. Cable & Wireless PLC, 361 F. Supp.

10

2d 205, 210 (S.D.N.Y. 2005) (key consideration to determining whether defendant is an "employer" under the NYSHRL is whether the defendant "exercised control over the employee's conduct and the incidents of his employment"); accord Goyette v. DCA Adver. Inc., 830 F. Supp. 737, 746 (S.D.N.Y. 1993); Germakian v. Kenny Int'l Corp., 543 N.Y.S.2d 66, 67 (1st Dep't 1989). Indeed, Langhorne specifically alleges that he was the Port Authority's -- not RHI's -- employee. See Am. Compl. ¶ 4.

The NYCHRL permits suits not only against employers but also their "agent[s]." See N.Y.C. Admin. Code § 8-107(1)(a). This addition is of no help to Langhorne, however, as he does not allege that RHI acted as an agent of the Port Authority <u>with respect to the acts of discrimination alleged in the complaint</u>. Rather, the only facts alleged with respect to that agency relationship are that RHI was the employment agency that hired Stark and placed him at the Port Authority. See Am. Compl. ¶ 24.

Both statutes permit suit against an "employment agency." But this provision too is of no assistance to Langhorne because such suits are permitted only for discrimination by an employment agency in "acting upon applications for its services or in referring an applicant or applicants . . . to an employer or employers." N.Y. Exec. Law § 296(1)(b); N.Y.C. Admin. Code § 8-107(1)(b). There is no allegation that RHI discriminated against Langhorne in either of these respects.

Accordingly, Langhorne's claims under the NYSHRL and NYCHRL must be dismissed.

E. The Tortious Interference With Contract Claim

Under New York law, there are four elements to a claim for tortious interference with contractual relations: "(1) the existence of a contract between plaintiff and a third party; (2)

defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff[.]" Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993); accord G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 767 (2d Cir. 1995), cert. denied, 516 U.S. 944 (1995).

This claim fails for essentially the same reason as the others: the absence of factual allegations in the complaint that RHI -- as opposed to Stark -- did anything at all with respect to Langhorne's employment at the Port Authority, let alone that RHI "intentional[ly] induce[d]" the Port Authority to breach its contract with plaintiff or that it had "knowledge of the contract."

The specific act alleged to have constituted the tortious interference was that "Robert Half and its employee procured the discharge by making false statements against plaintiff and committing fraud by tampering and altering plaintiff's time sheets." Am. Compl. ¶ 111. However, the complaint elsewhere alleges that Stark -- not RHI -- altered the time sheets and thus committed the acts "used by defendants in order to terminate plaintiff." Id. ¶ 34. Simply put, there are no factual allegations supporting the claim that RHI, as opposed to Stark, procured Langhorne's discharge. And, as already discussed, Stark acted on behalf of the Port Authority with respect to his interactions with Langhorne described in the complaint, not on behalf of RHI.

Because Langhorne has failed to allege all the elements of the tortious interference with contract claim with respect to RHI, it should be dismissed.

<u>Conclusion</u>

For the foregoing reasons, RHI's motion to dismiss the complaint (Docket #22) should be granted.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. <u>See</u> also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Honorable Richard M. Berman, 40 Centre Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Berman. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 144-45 (1985).

Dated: November 10 2005
       New York, New York

                                                      GABRIEL W. GORENSTEIN
                                                      United States Magistrate Judge

Copies sent to:

Gary H. Glaser
Seyfarth Shaw LLP
1270 Avenue of the Americas, Suite 2500
New York, NY 10020-1801

Robert J. Barsch, Esq.
60 East 42nd Street, Suite 2501
New York, NY  10017

Megan Lee
Milton H. Pachter
The Port Authority of New York and New Jersey
225 Park Avenue South
New York, NY  10003

Hon. Richard M. Berman
United States District Judge

## Conclusion

For the foregoing reasons, RHI's motion to dismiss the complaint (Docket #22) should be granted.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Honorable Richard M. Berman, 40 Centre Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Berman. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 144-45 (1985).

Dated: November 10, 2005
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Gary H. Glaser
Seyfarth Shaw LLP
1270 Avenue of the Americas, Suite 2500
New York, NY 10020-1801